## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, | **Civil No.** _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Greenberg Farrow Architecture Incorporated, | |
| Defendant. | |

Plaintiff Target Corporation ("Target") for its Complaint against Greenberg Farrow Architecture Incorporated ("GFA") states and alleges as follows:

### PARTIES

1.      Target is a national retailer incorporated under the laws of Minnesota and headquartered in Minneapolis, Minnesota.

2.      GFA is a national architectural firm incorporated under the laws of Georgia and headquartered in Atlanta, Georgia, with its principal place of business located at 1430 West Peachtree Street NW, Suite 200, Atlanta, Georgia 30309.  GFA is a foreign corporation registered to do business in the state of Minnesota.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over the claims set forth in this Complaint by virtue of 28 U.S.C. § 1332(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

GFA has also consented to personal jurisdiction in the state of Minnesota. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199-200 (8th Cir. 1990).

## FACTUAL BACKGROUND

### The Contract

5.      On or about June 2002, GFA and Target entered into an AIA Document B-141 - 1997 Standard Form of Agreement Between Owner and Architect, with Standard Form of Architect's Services, as modified by the parties ("Contract"). *See* attached Exhibit A.

6.      Pursuant to the Contract, GFA provided architectural and engineering design services for the construction of a building located in New York, New York and known as Riverdale Plaza. *See id.* Riverdale Plaza contains, among other occupants, a Target store and a Marshalls store. Target was responsible for constructing the entire building, and Target discharged this obligation by entering into contracts with, among others, GFA.

7.      Paragraph 2.9.4 of the Contract obligates GFA to indemnify Target for financial losses caused by the fault of GFA:

> 2.9.4  To the extent caused by the fault of the Architect the Architect shall be liable to and shall indemnify the Owner and each of its agents, employees, officers, members, and visitors, and shall hold each of the foregoing harmless from and against any and all claims, losses, damages, expenses, penalties, costs and other liabilities, including reasonable attorney's fees and disbursements arising out of or resulting from the performance of the professional services rendered by the Architect or in the enforcement of this Paragraph. . . .

8.     The Contract provides that it "shall be governed by the law of the principal place of business of the Owner." Contract ¶ 1.3.7.1.

**The Roof Deck Parking at Riverdale Plaza**

9.     The roof deck for Riverdale Plaza serves as parking for the stores at the shopping center.

10.     The building has a structural steel frame and composite lightweight concrete roof slab on a steel deck. A concrete topping slab was placed above the structural slab / deck to provide a parking lot surface. The steel frame also supports precast concrete wall panels that make up most of the building's façade and which form a parapet wall around the perimeter of the roof top parking area. *See* attached Exhibit B, WJE Engineers & Architects, P.C. Dec. 11, 2009 report ("WJE Report") p. 1. The precast concrete wall panels are attached to the steel frame by means of slotted, threaded-rod connections that are cast into the backside of each precast panel and welded to the steel frame. *See id.* at p. 2; Fig. 8.

**Discovery of Failed Precast Panel Connections**

11.     On or around December 8, 2008, a vehicle struck one of the precast concrete wall panels on the rooftop parking deck of Riverdale Plaza.

12.     After the collision, it was observed that the precast panels in the area of the collision had tilted outward.

13.     The structural engineer of record, Gennady Saratofsky, was called to Riverdale Plaza to investigate on or around December 9, 2008.

14. As a result of his investigation, Mr. Saratofsky stated that the precast wall panels had a serious structural problem and advised Target to take immediate action to brace the panels so that they would not fall off the building.

15. Target thereafter installed temporary bracing on the precast panels, including those in the area of the Marshalls store.

16. Subsequently, the precast panel connections were exposed at the area of the vehicle collision, and it was discovered that the connections in the area had severed. Adjacent connections were exposed and additional connection failures were discovered.

17. In January 2009, Target hired American Engineering Testing, Inc. ("AET") to assess the condition of all the precast panel connections around the perimeter of the building.

18. AET's investigation revealed that 65 out of 75 inspected connections were severely damaged, and could no longer provide any resistance to lateral loads. *See* WJE Report p. 2; Fig. 7. This property damage extended to precast panels and connections located both in the area of the Target store and the Marshalls store.

19. Prior to the car accident in December 2008, Target was unaware that any of the concealed precast panel connections had failed.

**Target Undertakes Inspection and Extensive Repairs**

20. On or around February 23, 2009, Target began an extensive inspection and repair program for the precast panel connections. 151 panels were inspected, containing 314 connections. Sixty-three percent of the connections were found to have sustained

damage that required repair. *See* WJE Report p. 2; Fig. 9. Property damage to the precast panels and connections was found on all four sides of the roof deck. *Id.* p. 7.

21.     GFA provided the design details for how the concrete topping slab of the roof deck parking area terminates at the precast panels. *See id.* p. 3; Figs. 11, 12. The details provided by GFA call for a <u>maximum</u> one-inch gap between the topping slab and the face of each precast panel. No <u>minimum</u> gap was specified. *Id.* The specified maximum gap was insufficient to fully account for the thermal expansion of the topping slab. In addition, there were insufficient expansion joints specified in the field of the topping slab to accommodate thermal expansion.

22.     The property damage to the precast panels and connections was caused by thermal expansion of the topping slab, which was not fully accounted for in GFA's design. *Id.*

**GFA Fails to Honor its Indemnity Obligation**

23.     GFA was first notified of the property damage when its structural engineer of record, Mr. Saratofsky, visited the site on or around December 9, 2008.

24.     In the spring and summer of 2009, GFA's representatives visited the building on several occasions and observed the damaged precast panel connections and Target's proposed repairs to same. Target also provided GFA with drawings, reports, and photographs in Target's possession which documented the property damage.

25.     At no time did GFA indicate that the repairs of the failed precast panel connections were unnecessary. Nor did GFA suggest less costly methods of repair than those proposed by Target.

26.     Target repaired the failed precast panel connections on the roof deck, which included panel connections located both in the area of the Target store and the Marshalls store. To repair the failed precast panel connections, Target spent in excess of $1.4 million.

27.     By letter dated December 28, 2009, counsel for Target requested that GFA indemnify and reimburse Target for the costs of repair of the property damage resulting from the precast panel connection failures at Riverdale Plaza.  GFA has, to date, failed to honor its indemnity obligation or otherwise reimburse Target for the costs of repairing the property damage.

## COUNT I:  BREACH OF CONTRACT

28.     Target hereby restates and realleges Paragraphs 1 through 27 herein.

29.     GFA breached its Contract with Target by failing to design Riverdale Plaza in accordance with the requirements of the Contract and sound design practices, including, but not limited to, failing to design the topping slab / precast panel interface to fully account for thermal expansion of the topping slab.

30.     GFA has also breached its Contract with Target by failing to reimburse Target for the expenses it has incurred in repairing property damage arising out of or resulting from the performance of the professional services rendered by GFA.

31.     As a direct and proximate result of GFA's breaches, Target has incurred and continues to incur damages in an amount in excess of $75,000, plus attorneys' fees, costs and litigation expenses, all such amounts to be proven at trial.

## COUNT II:  NEGLIGENCE

32.     Target hereby restates and realleges Paragraphs 1 through 31 herein.

33.     GFA performed its work on the Project in a negligent manner, by failing to exercise reasonable care and diligence, and by failing to act with reasonable judgment.

34.     As a direct and proximate result of GFA's negligence, Target incurred and continues to incur damages in an amount in excess of $75,000, plus attorneys' fees, costs and litigation expenses, all such amounts to be proven at trial.

## COUNT III:  INDEMNIFICATION

35.     Target hereby restates and realleges Paragraphs 1 through 34 herein.

36.     Pursuant to the Contract and applicable law, GFA is required to indemnify, defend and hold harmless Target against any and all claims, losses, damages, expenses, penalties, costs and other liabilities, including reasonable attorney's fees and disbursements arising out of or resulting from the performance of the professional services rendered by GFA.

37.     Despite due demand from Target, GFA has failed to indemnify Target for losses, damages, expenses, penalties, costs and other liabilities it has incurred arising out of GFA's services.

38.     As a direct and proximate result of GFA's breach of its indemnity obligations, Target has suffered damages in an amount in excess of $75,000, plus attorneys' fees, costs and litigation expenses, all such amounts to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Target Corporation, requests judgment of this Court as follows:

1.      Against Defendant Greenberg Farrow Architecture, Inc. on Counts I, II, and III of this Complaint, in an amount in excess of $75,000, plus interest, attorneys' fees, costs, and litigation expenses, all such amounts to be proven at trial; and

2.      For such other relief as the Court deems just and equitable.

Dated: December 3, 2010

FAEGRE & BENSON LLP

James J. Hartnett IV, #238624
Michael A. Ponto, #203944
Michelle E. Weinberg, #0388771
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000
Facsimile:  (612) 766-1600
JHartnett@faegre.com
MPonto@faegre.com
MWeinberg@faegre.com

**Attorneys for Target Corporation**

fb.us.5869750.05